# DECLARATION OF AMY ROMERO, LAWYERS' COMMITTEE FOR RHODE ISLAND

I, Amy Romero, make the following declaration based on my personal knowledge and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2. I am the Chief Legal Counsel for the Lawyers' Committee for Rhode Island ("LCRI"), where I have held this position since March 2025. At LCRI, I represent non-profit organizations, cities, and individuals in litigation against illegal actions by the federal government. Prior to joining LCRI, I served as an Assistant United States Attorney in the District of Rhode Island from 2016 until March 2025, where my work focused on civil rights litigation. Prior to government service, I worked as a staff attorney at Rhode Island Legal Services and Community Legal Aid in Worcester, Massachusetts, where I regularly practiced in Rhode Island and Massachusetts state and federal courts. I am a member of the Bar of the State of Rhode Island, the Commonwealth of Massachusetts, the U.S. District Court for the Districts of Rhode Island and Massachusetts, and the Court of Appeals for the First Circuit.

3. In my capacity as Chief Legal Counsel, I am responsible for overseeing all LCRI's litigation, including oversight of litigation performed by all staff and volunteer attorneys. I have direct knowledge of LCRI's operations, staffing, and the impact of the U.S. Immigration and Customs Enforcement ("ICE") online detainee locator system ("ODLS") on our litigation and the populations we serve.

## I. LCRI's Mission, Services and Communities Served

4. LCRI is a nonprofit public interest law firm that was founded in December 2024 to hold the federal government accountable to the law and to protect the people, organizations, and institutions of Rhode Island, and, through them, communities nationwide.

5. In addition to its Nonprofit Legal Protection Project, LCRI provides emergency habeas representation for individuals detained by ICE and held at the Donald W. Wyatt Detention Facility ("Wyatt"), located in Central Falls, Rhode Island. LCRI responds to requests for representation in habeas corpus petitions from detained individuals, their families, and immigration practitioners, as well as referrals from the Habeas Project of New England ("Habeas Project NE"), for which LCRI is the primary partner in Rhode Island.

6. In the last twelve months, LCRI staff attorneys have represented more than three dozen individuals in habeas proceedings. Through Habeas Project NE, LCRI has provided mentorship to dozens of immigration and federal practitioners filing habeas petitions in the District of Rhode Island. Additionally, LCRI has successfully petitioned Rhode

Island's federal court to open its doors to out-of-state pro bono habeas counsel, a general order now cited as a model for other districts.[1]

## II. LCRI's Use of ODLS to Locate and Assist Detained Individuals Before the ODLS Policy Change

7. LCRI attorneys rely on ODLS quite heavily in our habeas practice. Since most of LCRI's habeas requests come from referrals, the first thing our attorneys do when they receive a referral is go on to ODLS to determine where the individual is detained. Since LCRI's representation is primarily limited to people detained at Wyatt, we generally will not accept a case for full representation if an individual is detained elsewhere.

8. Generally, habeas petitions can only be filed in the jurisdiction in which the detained individual is being held. Access to the ODLS, therefore, ensures that LCRI is filing habeas petitions in the proper venue.

9. Knowing a detained person's location is necessary and important because that information is what allows LCRI to arrange confidential communications, obtain information needed to evaluate potential claims, identify appropriate respondents, and assess where to seek relief. When we cannot determine a person's location, we must spend additional time attempting to locate them while evaluating whether and where to seek emergency relief without that data.

## III. Effects of the ODLS Policy Change on LCRI's Services and Operations

10. The ODLS policy change—in which ICE is effectively disappearing individuals subject to removal orders from the locator system—has directly interfered with LCRI's ability to provide habeas representation, as we now must exert time and energy to attempt to locate present and future clients. We are also forced to engage in additional litigation over the government's objections to the forum if our client happens to have been transferred before we are able to file a habeas petition for them.

11. For example, the Harvard Immigration and Refugee Clinical Program ("HIRC") recently contacted LCRI regarding a prior client of theirs, M.K, who needed representation in a habeas case challenging the unlawful revocation of his order of supervision ("OSUP") for the second time.

12. M.K. is a long-time resident of Rhode Island. He was granted withholding of removal nearly 15 years ago. After a decade and a half of living freely in the United States, ICE suddenly and improperly revoked M.K.'s OSUP earlier this year and detained him. With the help of HIRC, M.K. was granted a writ of habeas corpus, ordered immediately released, and was placed on another OSUP. Since his release, M.K. has complied with all demands and requirements imposed on him by the government. Nevertheless, ICE again

---

[1] D.R.I. General Order 2026-01, available at https://www.rid.uscourts.gov/sites/rid/files/documents/generalorders/General%20Order%20Re%20Habeas%20Rule.pdf.

revoked his OSUP, and re-detained him for a second time at a scheduled ICE check-in in September 2026.

13. Immediately after receiving the referral, LCRI Staff Attorney Juan Bedoya logged onto ODLS to find out where M.K. was being detained to determine whether LCRI could represent him and ascertain the proper venue for a potential habeas petition. Despite many attempts and entering various search criteria, Juan could not locate M.K. in ODLS.

14. After the ODLS searches could not establish his location, Juan attempted to reach M.K. by scheduling a legal call at Wyatt, assuming that he might be detained there since M.K. is a Rhode Island resident and the referral came from HIRC. However, on the day of the scheduled call, M.K. did not appear. Juan later received an email from the records supervisor at Wyatt advising him that M.K. had been transferred to another detention facility the night before. Thereafter, Juan checked ODLS again, but M.K. still did not appear in any searches. Therefore, all LCRI knew is that M.K. had been at Wyatt and that ICE had transferred him. We did not know where he was currently located.

15. On the same day, Juan quickly filed a habeas petition on M.K.'s behalf in the District of Rhode Island, his last known location, challenging the unlawful revocation of his OSUP. The government responded by filing a motion to transfer the habeas petition to the Western District of Louisiana where we later learned, after filing the petition, that ICE had transferred M.K. As opposed to litigating the substance of the habeas petition, Juan was forced to oppose and litigate the government's motion to transfer as a result of not being able to determine M.K's location in the first place. The District Court of Rhode Island eventually ruled that it had jurisdiction over the petition and ordered M.K.'s return to Rhode Island—a process which took over a week, thereby delaying the case and forcing M.K. to spend more time in detention. After his return, Juan litigated the substance of the habeas petition and the Court granted M.K. immediate release. Currently, M.K. is free of ICE detention as a result of the habeas petition.

## V. Ongoing Effects of the ODLS Policy and How Restoring Access Would Address Them

16. LCRI currently has about a dozen clients who are subject to final orders of removal. If they are re-detained while the ODLS policy is still in effect, we will have no way of locating them to discuss any relief that is available to them or to act quickly on their behalf or determine the appropriate venue for a potential habeas petition.

17. We also have a number of clients who are subject to removal orders but are not detained . If ICE were to detain these individuals, LCRI would have no way of finding them in the system.

18. Since LCRI's habeas representation is primarily limited to individuals detained at Wyatt, we rely heavily on ODLS to locate our current and prospective clients. Wyatt does not use ERO eFile, so ODLS is the only tool we have at our disposal to know which ICE detention center members of our community are detained.

19. We have recently been in touch with a detained gentleman who has been in ICE custody at Wyatt for close to six months. He is not showing up in any ODLS searches. If he is moved from Wyatt while we are evaluating a potential challenge to his continued detention, his absence from ODLS will impede our ability to locate him, maintain contact, and provide timely assistance.

20. Additionally, although the reporting has indicated that the ODLS policy change only applies to people with final orders of removal, LCRI has at least one client who is not subject to a removal order and who is not appearing in the locator.

21. Prior to the policy change, ODLS was not perfect, by any means—the information was not updated with any urgency if an individual was transferred and the system was riddled with errors such as misspelled names and wrong countries of birth matched to an A-number. However, not being able to use the system for its intended purpose and finding individuals with critical case postures is far more harmful and presents new, significant challenges for us to complete our organizational mission.

22. Restoring ODLS listings for detained individuals with final removal orders would restore a source of location information that LCRI routinely uses and relies on to evaluate referrals, arrange client communications, and prepare emergency filings. It would reduce the additional searches and inquiries, and additional litigation around venue, described above, and help us provide timely representation. It is LCRI's hope that ODLS will be restored to its full capacity, along with improved, updated processes and functionality.

Executed this 21st day of October, 2026 in Providence, Rhode Island.

________________________________

AMY ROMERO