**DECLARATION OF MADHAVI NARAYANAN,**
**HUMAN RIGHTS FIRST**

I, Madhavi Narayanan, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently and truthfully to these matters.

2. I am a staff attorney with Human Rights First ("HRF") based in Los Angeles, California.

3. I am an attorney in good standing in the State of New York. I am admitted to the state bar of New York. I have been practicing immigration law for 3 years.

4. I represent several clients in immigration detention who have final orders of removal.

5. One client, Mr. JI, a gay man from Ghana, was pressured into accepting voluntary departure during the final hearing in his removal proceedings, in which he appeared *pro se*. The immigration judge gave Mr. JI the choice of either being removed to Ghana or choosing voluntary departure where he could travel to a different country of his choice. Mr. JI had been tortured in Ghana on account of his sexual orientation and fled to the United States to seek protection. Fearing being sent back to Ghana, Mr. JI elected to proceed with the voluntary departure option. Mr. JI attempted to appeal the voluntary departure order on his own, to no avail. When I met him around late August 2026, I realized that Mr. JI was eligible to file a motion to reopen his immigration proceedings based on substantial new evidence of his fear of return to Ghana and changed country conditions. Mr. JI has no criminal history in any country.

6. When I first met Mr. JI, he was detained in California and had been detained there since his arrival in the United States in early 2025. Unfortunately, after September 15, 2026, Mr. JI stopped appearing in the U.S. Immigration and Customs Enforcement ("ICE") online detainee locator system ("ODLS"). This change to ODLS severely delayed my ability to file Mr. JI's motion to reopen and to request a stay of removal. This delay ultimately led to Mr. JI's removal from the United States. His asylum application was never fully considered or adjudicated.

7. Around the first or second week of September 2026, Mr. JI was transferred out of California to a facility in Arizona that does not use the ICE ERO eFile scheduling system and requires attorneys to email in requests for legal calls. I learned of this when Mr. JI was able to make a one minute free call to me from his new facility, and I confirmed his new location using the ODLS. Since my very first meeting with Mr. JI, I consistently

searched for him on the OLDS using his A-number and country of birth—in the beginning he would appear in the search results; however, after September 15, Mr. JI did not appear in any of the searches despite the varying search criteria I used and even though I knew that he was still in ICE custody at this center in Arizona.

8. Mr. JI spent about two weeks detained in Arizona. Around September 27, 2026, he called me to let me know that he was just told that he would be leaving the Arizona facility in 5 minutes, but he did not know where he was being taken. And since Mr. JI was not appearing in ODLS, this meant there was no way for me to determine his location without him proactively reaching out to me. I did not know if he was being removed from the country or if he was simply being transferred. I attempted to call several facilities, including the Alexandria Staging Facility ("Alexandria") in Louisiana which is where flights to Ghana usually depart from. At Alexandria, the detention staff told me that they could not confirm over the phone if Mr. JI was there and ultimately referred me to ICE. When I asked to be transferred to ICE, the call went to voicemail several times. I left messages but never received a reply.

9. The next day, on September 29, 2026, Mr. JI called to notify me that he was back in California, but he did not know for how long. He was calling from a friend's phone account because his commissary had not transferred over, as is common when a detainee is being transferred or removed. I was concerned because he had immigration relief available to him, but I needed some additional information and evidence that he had in his possession to be mailed to me. Mr. JI and I did not have enough call time to speak to go over any of his options. Since he was back in California, I scheduled a call with Mr. JI via the ERO eFile platform for 7:30am the next day, the earliest appointment slot available, hoping to get the last pieces of information I needed to file the motion to reopen and request for an emergency stay of removal.

10. Later the same day, another detainee called me from the same California detention center to tell me that Mr. JI had asked them to notify me that he was being moved again, and that the immigration officials were not allowing him to make any phone calls prior to being moved. Mr. JI did not know where he was being taken or why.

11. The next morning, I again checked ODLS, but Mr. JI still was not appearing in any searches. Around 6:15am, I received an email from the California detention center, that Mr. JI was no longer at the facility, and, as a result, my 7:30am call with him was cancelled. Needing desperately to speak with Mr. JI, I then checked ERO eFile to see if, by chance, he was being held at another facility that possibly uses the platform to schedule legal calls. Confusingly, the system showed that Mr. JI was still at the California facility. Relying on this information, I quickly scheduled another call with Mr. JI for

12pm the next day, and the facility confirmed my appointment. At 7am on the day of the appointment, my appointment was again cancelled because Mr. JI was no longer at the facility.

12. Since I did not have the crucial information I needed to file the motion to reopen and request for an emergency stay of removal, I could not move forward in requesting relief in Mr. JI's immigration case. I continued to check ODLS to no avail and did not receive any communication from him. On ERO eFile, the platform indicated that Mr. JI was at a detention facility that did not use the platform to schedule legal calls, but it did not specify which facility. I tried to call the Alexandria facility again to no avail.

13. Mr. JI was unable to contact me until October 5 because he did not have phone access until then– approximately 6 days after he was moved from the California facility. When I spoke with Mr. JI, he told me he believed he was in Louisiana, but he did not know the name of the facility as the ICE officers there refused to inform him despite his repeated requests. He also told me that ICE provided him with an ID card saying the name of the detention center was "La Salle." When I searched online for a "La Salle" Detention Center, the only active "La Salle" detention facility was in Texas. I tried to schedule a legal call with the La Salle Detention Facility in Texas on ERO eFile to no avail. My research also revealed that Central Louisiana Detention Center used to be called La Salle, so I tried to call both that facility and the Texas facility, but neither picked up the phone.

14. Mr. JI eventually called me on October 5, albeit on a general, non-private phone line. I was forced to have a privileged conversation with Mr. JI in an non-secured environment because I needed to complete his motion to reopen quickly. The next day, I filed Mr. JI's lengthy motion to reopen and an emergency stay request with the Board of Immigration Appeals ("BIA").

15. Through my colleagues at Human Rights First's ICE Flight Monitor team, I became aware that there was a removal flight headed to Ghana leaving that same evening, so I called the BIA emergency stay line to let them know of my filing, which included a country expert report confirming that my client was likely to be persecuted or tortured if returned to Ghana. The emergency stay line operator advised me that they would alert ICE that there was a stay request pending, but that was all they could do. To date, neither the BIA nor ICE has contacted me about this request.

16. I did not hear back from Mr. JI for several days. On Monday, October 12, 2026, he contacted me to inform me that he had been removed in Ghana and was in hiding and afraid for his life. When Mr. JI was removed, his phone and belongings were not returned to him, so he had been unable to contact me earlier.

17. Had I been able to locate and have a legal call with Mr. JI on the week of September 28th 2026, I could have filed his motion to reopen and request for stay of removal the week prior, which would have given the BIA several days – rather than a few hours – to consider and adjudicate the stay request. Now that Mr. JI has been removed, reopening his case and getting him the chance to have his asylum request adjudicated becomes exponentially more difficult and his life is in danger every day. Because Mr. JI was pressured into accepting voluntary departure without fully understanding the implications, no adjudicator has ever made a decision on his application for asylum. Although I had an electronic G-28 on file in Mr. JI immigration case throughout this process, I was never alerted that he was going to be transferred or had been transferred.

18. As an attorney for HRF, a *pro bono* organization engaged in rapid response legal services, the change to the ODLS policy change has significantly impacted my ability to represent my clients and to advise their family members of their whereabouts after they are arrested.

19. In my experience, many noncitizens who are unlawfully arrested could be eligible for relief through a petition for writ of habeas corpus. I often advise family members or community advocates on how to file pro se habeases for individuals who have been unlawfully arrested. However, since the new ODLS policy change, family members and community advocates have greater difficulty in filing these pro se habeases, as they do not know where their loved ones are being detained. Filing in the wrong venue will almost always result in the petition being dismissed.

20. Although I do not have active habeas matters right now, I have assisted in numerous habeas filings over the past one year both directly and through HRF's pro bono partners. We have always relied on ODLS to confirm where the client is detained so that we are filing in the correct jurisdiction and naming the right Respondents, which generally includes the Warden of the facility. In the past, when filing a habeas for someone who may be transferred soon, I would check and screenshot the ODLS around the time of filing to have proof of why we are filing in a certain jurisdiction. With the ODLS policy change, any habeas filings we work on in the future will require time spent on the phone to try to confirm where our client is to ensure we are filing in the correct jurisdiction.

Executed on 23rd of October, 2026, at Los Angeles, California.

/s/___Madhavi Narayanan______

MADHAVI NARAYANAN