**DECLARATION OF MAGDALENA METELSKA,**
**METELSKA LAW P.L.L.C.**

I, Magdalena Metelska, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently and truthfully to these matters.

2. I am an immigration attorney based in Hopkins, Minnesota. I am the managing attorney at Metelska Law, P.L.L.C. I handle a wide variety of immigration matters including family petitions, employment-based petitions, humanitarian relief, and removal defense. I am licensed to practice in Minnesota. I have been practicing immigration law for 16 years. I am the former chair (2024-2025) of the Minnesota State Bar Association's Immigration Law Section.

3. I recently represented Luis S. ("Mr. S) in his habeas petition. At the time he was taken into custody he had a T-visa petition pending with the U.S. Citizenship and Immigration Services ("USCIS"). Mr. S is subject to a final order of removal.

4. On September 11, 2026, Mr. S reported to a biometrics appointment scheduled in connection with his pending T visa application at USCIS St. Paul, 1105 University Avenue W Suite 102, St. Paul, MN 55104, where U.S. Immigration and Customs Enforcement ("ICE") arrested him.

5. ICE initially held Mr. S at Freeborn County Jail. On September 14, 2026, Mr. S's partner called my office at 11:05 pm to tell me that Mr. S had called her and told her that the jail staff took away his tablet and told him he will be deported at 4am on September 15, 2026.

6. I filed an emergency habeas petition and temporary restraining order in the U.S. District Court of the District of Minnesota on Mr. S' behalf in the early hours of September 15, 2026. Later that morning, I called ICE at the Fort Snelling office multiple times between 8:00 am and 9:00 am to discuss Mr. S's case but no one answered the phone.

7. I also called ICE Enforcement and Removal Operations ("ERO") at the St. Paul Field Office in Minnesota (at 612-409-7799) and a woman answered the phone. The representative requested Mr. S's A-number, date of birth, and country of birth—I provided the requested information. Ultimately, the representative informed me that she could not find a person connected to the information I provided.

8. Also the same day, I checked ICE's Online Detainee Locator System ("ODLS") at 11:25 am to determine the location of my client. I did not receive any results from any combination of search criteria I entered. .

9. After my unsuccessful ODLS searches, Mr. S's partner called my office to let me know that Mr. S was being detained at Fort Snelling, MN.

10. In the early afternoon, I went to the Whipple Building ("Whipple"), an ICE processing center in Fort Snelling, in hopes that I would find Mr. S there so that I could meet with him and he could fill out his I-246 (Application for a Stay of Deportation or Removal).

11. When I got to Whipple, I was instructed by an ICE official to go downstairs to the detention visitation area. When I arrived to the designated area, I was told by another ICE official that Mr. S was already on a plane to Texas.

12. Around 3:18pm, I checked ODLS again; Mr. S's location still did not appear. I was later able to confirm that he was transferred to Camp East Montana in El Paso, Texas because he managed to call his partner from there.

13. On September 18, 2026, I again checked ODLS to determine Mr. S's location but the system returned zero search results.

14. On September 22, 2026, Mr. S's partner informed me that Mr. S was being moved again to another detention facility in El Paso, Texas.

15. If ODLS had shown me Mr. S' location, as it previously would have, I would have been able to reach him in time while he was at Whipple to fill out his application for a stay of removal before he was transferred to Texas. After he was transferred to Texas, it became virtually impossible to have him complete the necessary forms to request a stay of removal. Due to the physical distance, I was unable to visit him and mailing him the necessary forms would have taken too long. Mail to and from detention facilities often takes much longer than the few days that the postal service generally takes to deliver mail. Because Mr. S was being moved to multiple different locations within days, by the time the forms would have arrived, he would not have been at the detention facility the forms would have been sent to. And even if he had received the forms, he would then have had to mail them back to me—resulting in a total process that would have taken days if not weeks.

16. We even reached out to a local attorney in Texas in an attempt to meet with Mr. S and fill out the necessary paperwork but the constant transfers of Mr. S to various detention centers made pinpointing his location impossible and therefore hiring a local attorney futile.

17. The evening of September 22, 2026, Mr. S's partner informed me that Mr. S was deported and was in Mexico City, Mexico.

18. The U.S. District Court for the District of Minnesota denied the TRO and after Mr. S' deportation, we moved to dismiss the petition for habeas because Mr. S being out of detention made our request for release moot and we no longer had a case to pursue.

19. I routinely represent individuals in ICE detention, including individuals with final orders of removal. Until recently, I have been able to ascertain the location of clients with final orders of removal in ODLS, both when they have been in custody in Minnesota and after their transfer to out-of-state facilities.

20. Because I was not able to determine Mr. S's location, I was not able to get his signature on the required forms to request a stay of his removal. As a result, he lost his opportunity to relief he was eligible for. Mr. S also lost his pending T visa because deportation results in a permanent loss of the opportunity to be considered for this benefit. 8 C.F.R. § 214.207(a)

21. ICE's removal of detainees with final orders from ODLS impairs the attorney-client relationship and makes effective representation of clients very difficult, if not impossible. Even though Mr. S has a final order of removal, he was still eligible for a T-visa, as long as he was physically present in the United States, and other forms of relief, including a stay of removal. If I had been able to reach him before he was transferred and ultimately deported, Mr. S would have been able to avail himself of the available relief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 24th of October, 2026, in Hopkins, Minnesota.

/s/______________

Magdalena Metelska