**DECLARATION OF ROSALYN LEBAN,**
**NORTHWEST IMMIGRANT RIGHTS PROJECT**

I, Rosalyn Dietrich Leban, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently and truthfully to these matters.
2. I am a Staff Attorney with the Wenatchee office of Northwest Immigrant Rights Project ("NWIRP").
3. I am an attorney in good standing in the State of Washington. I am also admitted to practice before the Executive Office for Immigration Review ("EOIR") and the Board of Immigration Appeals ("BIA"). I have been practicing immigration law for more than two years.
4. I currently represent an individual, to whom I will refer for the purposes of this declaration by the pseudonym "John" to protect his confidentiality, with a previously executed final order of removal who was removed from the United States while his application for U nonimmigrant status was pending. I routinely work with individuals with final removal orders in the detained and nondetained contexts.
5. John was taken into U.S. Immigration and Customs Enforcement ("ICE") custody from U.S. Marshal custody on approximately Thursday, September 17, 2026, in Washington. I immediately attempted to locate him in the Online Detainee Locator System ("ODLS") using his immigration file number ("A-number"), date of birth, and full name. He did not appear despite multiple search attempts. The next day, on September 18, 2026, I tried again to locate John in ODLS, and again he did not appear. I was eventually able to make an appointment with him using ICE's Enforcement and Removal Operations ("ERO") eFile system. I had correctly guessed that my client was sent to the Northwest ICE Processing Center ("NWIPC") because people detained in Washington are generally, but not always, sent initially to NWIPC. I was only able to locate John in the ERO eFile system because I correctly guessed the name of the facility at which he was detained. If I had not correctly guessed the facility at which John was detained, my understanding is that, as of September 17, 2026, I would not have been able to make an appointment, because the ERO eFile system required me to input the detention center's name along with the individual's A-number to access its lookup feature. I did not have a G-28 on file before John was sent to NWIPC.

6. Once in the ERO eFile system, I scheduled a video meeting with John for the earliest possible time: Saturday, September 20, 2026. However, on the day of our first scheduled video meeting, September 20, I was unable to connect at the scheduled time, and ICE cancelled the appointment with the explanation that John did not want to wait any longer. I then scheduled another appointment for the soonest possible time thereafter: Tuesday, September 22.

7. On September 21, 2026, John's application for U nonimmigrant status arrived at the U.S. Citizenship and Immigration Services ("USCIS") facility. This pending application made John a class member in *ICWC v. Noem*, a class-action litigation that provides certain protections for individuals with pending applications for immigration relief based on being a victim of a crime, including U nonimmigrant status.

8. That same day, September 21, John's mother let me know that he had called her and told her that he would be deported and would lose phone access soon. That was the last time John contacted anyone from ICE detention.

9. At the scheduled time for our appointment on September 22, John did not connect to the video call. I called NWIPC's visitation officers after waiting between 5 and 10 minutes. The officer who answered the phone stated that John had already been "released" and was "no longer in our system." I have had at least two other clients who were transferred out of NWIPC to other ICE detention facilities, and NWIPC staff had never before used the word "released" to refer to a person transferred to another facility. I have had at least one client deported, and detention center staff did use the word "released" for that individual. Therefore, based on the officer's statement and NWIPC officers' prior, consistent practice, I believed that my client had been deported.

10. Despite my understanding, I still attempted to confirm my client's location in ODLS after speaking to the NWIPC officer. John did not appear in the system using any combination of identifiers. In the past, if an individual who I know had not been released on bond or recognizance within the U.S. did not appear in ODLS after NWIPC informed me that the individual had been "released," that would have confirmed that that person had been deported ("released"). Now, since the recent ODLS policy change, that is no longer necessarily the case.

11. On September 28, 2026, the Assistant U.S. Attorney assigned to John's federal criminal case informed the Federal Defender also assigned to his case that John was being held at Florence. The Federal Defender shared this information with me at approximately 8:30AM on September 28. I immediately attempted to locate my client in ODLS, but he

did not appear using any combination of identifiers. I then attempted to schedule a legal call with John at Florence using ERO eFile. I was able to schedule an appointment by manually selecting Florence in the system. The detention facility information did not automatically populate when I entered my client's A-number. If I had not known where he was being held, I would have had no other way of finding out, since Florence never allowed John access to the phone system. I scheduled the soonest possible appointment time to meet: the following day, September 29, 2026.

12. Immediately after scheduling the appointment, I attempted to call John through the visitation officer at Florence. I informed the officer that I had an urgent need to speak with John because I was concerned that he would be deported before I could speak to him the following day. The officer informed me that John had not yet been medically cleared. I requested that he be allowed to call me because of the urgency, and the officer said that he could not allow us to have a call because of the medical clearance issue. The officer informed me that he was a contractor, not an ICE officer, and instructed me to contact ICE directly. I told the officer that I had tried to call ICE, but they did not answer the phone. I asked whether he had a more direct line. The officer said he did not have a specific phone number, and recommended emailing.

13. The same day, I also called and emailed ICE's Arizona field office to inform them that I needed to discuss a pending application for an individual in ICE custody. I hoped to speak to ICE about John's *ICWC* class membership. No ICE officer or attorney ever responded. I spoke to one ICE officer on the phone, but he said that he did not have any information, and that the only way to discuss the pending application was to email the field office.

14. John was removed on September 29, 2026. I never got to speak to him while he was in ICE detention. If I had been able to contact John, I would have been able to discuss the legal options available to him and attempt to prevent his deportation. For example, I could have filed a stay of removal with ICE and requested his release from ICE as a class member under *ICWC v. Noem*. Or, I could have filed a petition for writ of habeas corpus. Being unable to locate my client prevented me from adequately representing his interests.

15. Even though I filed my G-28 on ERO eFile while John was at NWIPC and before he was transferred to Florence, I did not receive a notification that John had been transferred from NWIPC to Florence or out of Florence to outside the United States. It is my understanding that, despite being at Florence Service Processing Center ("Florence") in Arizona for approximately one week, John never had access to the phone system.

16. Between September 21 and September 28, no one outside of the detention facility had contact with my client. He did not call his mother, his criminal defense attorneys, or me, his immigration attorney. This was extremely difficult for his family, including his 14-year-old sister. John's mother spent every day waiting for a call to confirm whether her son was safe. Based on NWIPC officers' representations, John's mother believed that he had been deported to his country of origin but had not made contact. She endured a week of intense emotional stress because there have been multiple cases of murder after deportation to the country to which we believed John had been sent, and she had no way to know whether her son was still alive.

17. In addition to this specific case, ODLS's lack of information about individuals with prior removal orders has made it much more difficult for NWIRP to serve our client communities in Washington State. As a nonprofit legal services provider, we are able to provide direct representation to only a small percentage of the people who request our services. We attempt to provide orientation and information to potential clients whom we cannot represent. Now that it is impossible to locate individuals with prior removal orders in ODLS, we cannot provide information to community members about how to contact their detained family member or direct community members to appropriate resources for the detention center at which their relative is detained. Additionally, due to funding constraints, our organization can generally only represent people in Washington State. Not being able to locate a potential client prevents us from properly assessing our ability to assist. It also prevents us from making appropriate referrals to organizations that serve the relevant detention center.

18. Restoring access to ODLS would restore NWIRP's ability to provide adequate advice to clients and potential clients. In John's case, for example, it would have allowed me time to discuss strategy and attempt to prevent his deportation. Because John did not appear in ODLS, I had less than 24 hours to get in touch with him between finding out that he had not yet been deported and his actual deportation. Having access to ODLS would have allowed me to find John in ICE detention a week earlier than I did. I also could have coordinated with other organizations with offices in Arizona to arrange an in-person visit if speaking on the phone was not possible.

Executed on October 23, 2026, at East Wenatchee Washington.

/s/ Rosalyn Leban
Rosalyn Leban, WA62632