**DECLARATION OF HELEN BOYER,**
**PUBLIC COUNSEL**

I, Helen Boyer, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called to testify, I could and would do so competently and truthfully to these matters.

2. I am a senior staff attorney with Public Counsel.

3. I am an attorney licensed to practice law and in good standing in the Commonwealth of Pennsylvania, and I am a registered legal aid attorney with the State of California. I have been practicing immigration law for eight years. I am currently employed at Public Counsel, a nonprofit law firm based in Los Angeles, California. My work focuses on representing detained and non-detained individuals and families in removal and bond proceedings in immigration court and the Board of Immigration Appeals, and representing detained individuals in habeas proceedings before the United States District Courts. I also provide pro se assistance to individuals in immigration custody in California.

*Jose*

4. I provided pro se assistance to Jose[1] in his petition for review ("PFR") before the Ninth Circuit Court of Appeals ("Ninth Circuit"). Jose is a Central American man with prior gang affiliation, gang-related tattoos, and a significant criminal history. He believes he is at high risk of torture and persecution if he were to return to his home country. He presented his claim for protection under the Convention Against Torture ("CAT") to an immigration judge ("IJ"), who subsequently denied his claim. Jose appealed the decision to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's decision. Jose later filed a *pro se* PFR with the Ninth Circuit in late February 2026. In late June 2026, the Ninth Circuit denied Jose's PFR. He quickly filed a motion to reconsider.

5. At the time I learned about Jose's case in late September 2026, he had been recently transferred to ERO El Paso Camp East Montana ("Camp East Montana") in El Paso, Texas, after being detained for a period of time at California City Detention Facility ("CCDF") in California City, California. Jose understood that his transfer meant that U.S. Immigration and Customs Enforcement ("ICE") was staging him for removal. His motion to reconsider remained pending at the Ninth Circuit, and he had pending *pro se* motions to reopen and to stay removal with the BIA.

[1] To protect confidentiality, I am using pseudonyms instead of the individuals' actual names. The following client, Ronaldo, is also a pseudonym.

6. I spoke to Jose on or around September 28, 2026, while he was detained at Camp East Montana and agreed to help him file a *pro se* motion for a stay of removal and supplemental briefing in support of his motion to reconsider. That same day, I checked ICE's Online Detainee Locator System ("ODLS") and saw that Jose did not appear in any search results, despite the various search criteria I tried.

7. I attempted to contact Jose again on September 29 through a messaging platform called GettingOut so that we could further discuss his case. However, the app revealed that Jose had been "released" from Camp East Montana. I checked ODLS again, which continued to show no results. Based on data collected from the ICE Flight Monitor—a tool that tracks and documents U.S. immigration enforcement flights—and other sources, I became aware that many deportation flights originate from El Paso, and that ICE frequently uses Camp East Montana as a staging location for said deportations. Accordingly, I assumed that Jose may have been removed and that it was too late to file the *pro se* motion and briefing with the Ninth Circuit.

8. Because the ODLS was no longer showing information for individuals with final orders of removal like Jose, I did not know Jose's location after he was "released" from Camp East Montana and was unable to confirm whether he had really been removed or not. The following day, on September 30, 2026, Jose's sister informed my office that Jose was still in the United States and that he had called her from Winn Correctional Center ("Winn") in Louisiana.

9. After learning that Jose was at Winn, I tried to contact him as quickly as possible to discuss his case. Jose had several legal remedies available to him, such as a motion for a stay of removal and his pending motion for reconsideration at the Ninth Circuit. Additionally, I was worried about Jose's wellbeing because, during our prior conversation, he told me he was very scared about his impending removal. I was also concerned about Jose's wellbeing because I knew that the detention facilities in Louisiana had a reputation of having particularly brutal and inhumane conditions. I wanted to try to provide Jose with as much relief from those conditions as I could and to do so as quickly as possible.

10. The afternoon of September 30, I supported Jose in submitting a *pro se* motion for a stay of removal and a supplemental brief on his motion for reconsideration at the Ninth Circuit. I submitted a Form G-28 through Enforcement Removal Operations ("ERO")'s online platform on Jose's behalf so that ERO would communicate with me. I then

emailed the ERO New Orleans Field Office and the general email for ERO at Winn to inform them about Jose's pending stay motion. I never got a response.

11. The following morning, I emailed a copy of my G-28 and the docket from Jose's pending PFR case to the email inboxes for the ICE's Ninth Circuit Stay and for the ERO Bakersfield division, which had likely retained jurisdiction over the execution of his removal to inform them about the stay motion. I never received a response from ICE.

12. From October 1 to October 8, Jose remained at Winn. On October 8, our office learned through Jose's sister that Jose was moved to the Alexandria International Airport in Alexandria, Louisiana and was told that he would be placed on a removal flight the following day. Despite having a G-28 on file, I did not get any notification about Jose's transfer out of Winn.

13. Our office has since learned from Jose's family that he was removed to El Salvador on October 12, 2026. Upon arrival in El Salvador, he was immediately detained and imprisoned. He no longer shows up on ERO eFile. I usually get notifications through ERO eFile when my clients are removed or released from ICE custody, but in Jose's case, I received no such notification.

14. The new ODLS policy severely inhibited my ability to timely support Jose, follow his transfers, and even know whether he was still in the United States or not. It delayed my ability to help file Jose's *pro se* stay motion and supplemental briefing at the Ninth Circuit. I also know that the uncertainty around Jose's location caused Jose's loved ones anxiety and fear about his wellbeing.

*Ronaldo*

15. I frequently receive calls from *pro se* litigants who are asking for support with their habeas proceedings.

16. In early October 2026, I received a call from Ronaldo, who was detained at CCDF (and currently remains detained there). Ronaldo has a final order of removal. He filed a pro se habeas petition in June 2026, and continues to litigate it without the assistance of counsel.

17. When Ronaldo filed his habeas petition, his removal order had not yet become final. However, it became final while his petition was pending.

18. In late September 2026, the magistrate judge assigned to Ronaldo's habeas proceedings issued an order requesting supplemental briefing from the government "addressing whether this action is moot in light if [sic] Petitioner's apparent release from ICE custody, as reflected on the ICE Online Detainee Locator." The judge remarked that "[t]he Court's sua sponte search for Petitioner in the ICE Online Detainee Locator System returned zero matching results. Because Petitioner may no longer be in ICE custody, the Court must determine whether this action is moot before reaching the merits." The language of the order is harmful to Ronaldo since he is still detained and remains in ICE custody.

19. I understand from litigating other habeas petitions that the federal courts sometimes check the ODLS to confirm a petitioner's location. However, seeing this order in this case alarmed me, because I had not previously thought of the impact of the new ODLS policy on individuals, like Ronaldo, who were on the locator when their petition was filed, but were removed from ODLS during the pendency of the petition. I am concerned that federal courts may not understand that some individuals are being improperly excluded from ODLS and could erroneously dismiss or moot pending relief based on an assumption that the petitioner is no longer detained.

20. In my work providing *pro se* assistance, it is critically important to have accurate information regarding an individual's location. It is difficult to consult with family members about their loved one's case if we do not know where the person is. For many individuals with final orders of removal, time is of the essence.

Executed on 25 of October, 2026, in New Orleans, Louisiana.

Helen Boyer