**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GREATER BOSTON LEGAL SERVICES, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>*Defendants*. | C.A. No. 26-14869-ADB ___________ |

## DECLARATION OF MAGGIE MORGAN

I, Maggie Morgan, declare as follows:

1. I am an attorney who practices federal immigration law. I have a Bachelor's degree in Government from Harvard University, and a Master's degree in International Relations from the University of Chicago. I graduated from Harvard Law School with a Juris Doctor in 2011. I am a member of the bar in good standing in all jurisdictions in which I am admitted.

2. I have been employed at Greater Boston Legal Services ("GBLS") for roughly nine years, since 2017. I have held several positions within GBLS' Immigration Unit during that time. From 2017-2022, I worked as an Attorney and then as a Senior Attorney. In March 2022, I became the Managing Attorney of the Immigration Unit, a position I still hold.

3. Prior to my time at GBLS, I worked as a Clinical Fellow for the Harvard Law School Immigration and Refugee Clinic from June 2014-May 2017.

4. Throughout my career, I have personally represented hundreds of clients in immigration matters and immigration-related matters, including removal proceedings, bond

hearings and post-removal work. In my current role as Managing Attorney for GBLS' Immigration Unit, I both personally represent clients and supervise a team of attorneys, staff, and interns who represent or otherwise provide legal support to clients in immigration matters and immigration-related matters. The Immigration Unit has over 20 permanent staff, including more than 15 attorneys. I am familiar with the policies, practices, and operations of GBLS' legal services program for immigration matters, as well as much of GBLS' structure, operations, and organizational history.

5. Greater Boston Legal Services is a non-profit entity incorporated under the laws of Massachusetts. GBLS' offices are in Boston and Cambridge, Massachusetts. GBLS' mission is to provide civil legal assistance—including immigration-related assistance—to families and individuals living in poverty to help them secure the basic necessities of life, such as food, safety, and housing. In 2025, for example, GBLS helped approximately 12,000 clients with close to 15,000 legal matters. GBLS generally provides services to people who live in Boston and the Greater Boston metro area, including 31 cities and towns in Suffolk, Middlesex, Norfolk and Plymouth counties, and an expanded footprint for elder clients and individuals with immigration matters, due to a dearth of qualified, free legal services in Massachusetts.

6. GBLS and its predecessor organizations have been providing immigration-related services to immigrants in Massachusetts as part of their core business activities since approximately 1900. GBLS' history began with the formation of the Boston Legal Aid Society in 1900, which was established to meet the civil legal needs of the poor, including women with children and immigrants. In 1976, the Boston Legal Aid Society and a separate organization called the Boston Legal Assistance Project merged to form GBLS; the organization later subsumed Cambridge and Somerville Legal Services in the 1990s. In 2025, GBLS celebrated 125 years of

providing free civil legal aid across a breadth of poverty law specialties, including immigration relief.

7. GBLS' Immigration Unit provides legal representation for immigrants seeking safety, stability, and protection in the United States. In 2025, for example, GBLS' immigration law advocates represented several thousand clients. We focus on humanitarian immigration matters, including asylum and related forms of protection; relief for survivors of domestic violence and trafficking; safety of unaccompanied children and immigrant youth; and removal defense for non-detained and detained immigrants, particularly those providing care or support for their families. We also represent clients in the federal courts by filing petitions for habeas corpus challenging immigration detention, and we also represent immigrants seeking bond before the immigration courts. We represent clients before U.S. Citizenship and Immigration Services ("USCIS"), U.S. Immigration and Customs Enforcement ("ICE"), the Immigration Courts, the Board of Immigration Appeals ("BIA"), and, when appropriate, federal courts. We prioritize serving individuals and families facing significant barriers to safety and access to justice, and offer our legal services at no charge to clients.

8. GBLS runs a legal intake telephone line, and immigrants often call in for legal consultation. After assessment and consultation with staff who may identify a legal issue, path for relief, or viable advocacy option, many of our intakes become clients whom we represent in pursuing this relief. Other times, families, community organizations, or government agencies request that we conduct an intake and, if possible, initiate representation. In the immigration context, some people have already been detained by ICE when they (or someone on their behalf) contact us. Some other people are detained by ICE during or shortly after we begin the intake process, or during our subsequent representation. The Immigration Unit conducts hundreds of

immigration intakes a year while other GBLS units, including the Asian Outreach Center and the Workers' Rights Unit, conduct dozens more.

9. Among other services, GBLS provides legal assistance to immigrants on matters such as: T visas for victims of human trafficking; U visas for victims of certain crimes; petitions for status for domestic violence victims under the Violence Against Women Act ("VAWA"); special immigrant juvenile ("SIJ") process (including appearing in family court) for victims of childhood abuse, neglect, or abandonment asylum proceedings; motions to reopen removal proceedings; ICE check-ins for individuals with Orders of Supervision ("OSUPs"); representation in removal proceedings before the Immigration Court and the BIA; representation in Petitions for Review in the U.S. Court of Appeals for the First Circuit; representation for bond hearings; advocacy related to conditions of confinement, including through complaints with administrative agencies; and habeas petitions for detained immigrants in the U.S. District Court for the District of Massachusetts and elsewhere and subsequent appeals.

10. There are many factors which require prompt action in the event a client with a final order of removal is detained. One of these is that the government has adopted a policy of removing some people to countries that are not their country of designated removal, to which they have no connection, and in which they may face persecution or other maltreatment. *See, e.g.*, *D.V.D. v. DHS*, No. 26-cv-1212, 2026 WL 2797801 (1st Cir. Sept. 18, 2026), *judgment stayed by*, 2026 WL 2917860 (U.S. Sept. 29, 2026). Prompt action may be necessary to file a habeas petition or seek other relief in order to protect clients who may be subject to this policy. Another example is that prompt action may be required to advocate for people with severe medical conditions who are detained and may not have access to adequate medical care while in detention. Our advocacy in favor of detained clients, including those with severe medical conditions, sometimes involves

making complaints to ICE officials or the DHS Office of Civil Rights and Civil Liberties ("CRCL"), and at other times involves raising these issues in court cases.

11. GBLS presently represents multiple people who have final orders of removal in immigration matters. We also represent people whose cases are on appeal with the BIA, and whose removal orders may become final, but for whom we will still pursue legal relief following a final order. Our advocacy for these clients is significantly impaired if we cannot locate them to verify facts that are necessary to our continued legal representation.

12. As GBLS continues to conduct intakes for, and be engaged by, new clients in immigration matters, it is highly likely that some of these new clients will have final orders of removal, as well, and that at least some of them will be detained following contact with us. It is impossible for GBLS to fulfill its mission of providing legal services to people it would otherwise serve if it cannot locate and communicate with them.

13. Based on my observations of ICE's recent enforcement activity in the community, it is my understanding that ICE currently takes the position that it may detain and deport any person with a final order of removal, even if that person has an application for status pending with USCIS or is eligible to submit such an application, unless there is a court order to the contrary. ICE carries out these detentions at various times, generally without advance notice. GBLS' clients who have final orders of removal face a significant risk of arrest, detention, and deportation. In such cases, prompt action by counsel may be necessary to protect their rights, including potentially filing a petition for writ of habeas corpus challenging the legality of such detention, attempting to expedite or otherwise resolve pending applications for status, undertaking advocacy to protect clients in detention who have serious medical conditions, and filing motions to re-open removal proceedings.

Prompt action is especially critical to protect clients' rights because of the government's third-country removal policy.

14. ICE maintains a network of detention facilities across the United States. When a client is detained in Massachusetts, ICE does not always keep them in Massachusetts, and sometimes rapidly transfers them to another detention center out of the state. Providing services to a client in detention necessarily requires identifying the facility in which they are detained. Among other things, ascertaining the facility of detention is necessary to conduct phone calls, video conferences, and in-person visits; determine the proper district to file any petition for writ of habeas corpus (which ordinarily must be filed in the district encompassing the location of detention); communicate with the client about pursuing potential relief from removal, such as filing a motion to re-open the removal proceedings; secure information from the client concerning the circumstances of arrest and the client's current physical, medical, and mental condition; communicate with the client to continue processing pending applications for status with USCIS; obtain signatures when required, including for waivers and consent forms that allow counsel to collect medical records and other private records; and schedule certain in-person processes that are necessary to complete applications for status or obtaining evidence necessary to the client's immigration relief before an immigration judge or USCIS.

15. Previously, detained individuals with final orders of removal almost always appeared in the Online Detainee Locator System ("ODLS"). Although the ODLS was not perfect, in many cases it allowed us to immediately locate a detained client who had a final order of removal. Checking the ODLS to determine a client's facility is the first step when we learn that a client has been detained, or when we are gathering information about a potential intake who has been detained or cannot be found. Locating these individuals quickly is essential to protecting their

rights, accomplishing our mission as an organization, and fulfilling our obligations to provide representation to individuals in need of immigration services. Now that the government has stopped including people with final orders of removal in ODLS, our ability to promptly locate these individuals has been severely impaired.

16. By excising people with final orders of removal from ODLS, the government has cut off access to information that is necessary to GBLS' ability to fulfill its core business activities of providing legal assistance to vulnerable people with final orders of removal. GBLS now must expend significant time and resources to attempt to locate detained clients with final orders of removal, for example, by calling multiple facilities where they may or may not be located. This is laborious and does not guarantee finding the detained person. In some cases, we are able to pass our contact information on through friends and family to provide the detained person in case they call their loved ones, but this method of contact is unreliable. Even when an existing client or intake has our contact information, the length of time it takes for them to be given an opportunity to call us after arrival at or transfer to a detention facility is unpredictable, and sometimes they appear unable to contact us for several days after their initial detention or transfer. In my experience, most facilities do not allow a call immediately upon arrival. Further, even when people can call us, it appears they do not always know what specific facility they are in. For example, clients sometimes know they are in a particular state, but cannot identify which of the multiple detention facilities in that state. Such a person may have to contact us from a non-confidential line provided by the facility; and we have to then set up a separate confidential attorney call. Facilities vary in how long it takes to set up attorney calls, and sometimes cancel calls last minute; in some cases, this causes more delay. This delay and additional burden is not only a diversion of resources.

It also endangers our ability to act swiftly on behalf of clients, and in some cases makes it entirely impossible to reach the people in need of services our mission would have us provide.

17. In some instances, a detained person's family or a local government agency may contact us and ask us to provide assistance, and in such instances we generally initiate an intake process to attempt to ascertain the person's present location and status and whether we can be of assistance. Although we often could have previously confirmed whether or not a person had been detained and located them quickly using ODLS, now it is nearly impossible to locate such individuals and provide them with legal services if they have a final order of removal. This interferes with our legal services mission.

18. The burden caused by excising persons with final orders of removal from ODLS directly interferes with our ability to complete time-sensitive work required by our mission. For many, time is of the essence to complete substantive casework once they have been detained. For example, habeas petitions must usually be filed quickly in the venue where a person is detained, and sometimes must include details that can only be obtained from the client. When we cannot find a detained person for even one or two days, this delay may make it impossible for us to engage in the substantive advocacy needed in time to protect a client or prospective client with a final removal order from deportation and/or deprivation of rights.

19. The interference with our ability to complete time-sensitive work is compounded by the government's practices of swiftly transferring people among detention centers and deporting people to third countries. For example, where previously we could have quickly located, contacted, and filed a habeas petition for many clients with final removal orders before they were transferred to another facility out-of-state, we now may not always be able to locate them—or even confirm they've been detained—before they are moved. At minimum, this impairs our ability to

provide timely legal resources because of the additional time and resources necessary to locate and communicate with clients and prospective clients with removal orders; and in some cases, it will prevent us from providing those services at all. If a person is removed to a facility in a different jurisdiction, or deported—particularly to a third country—before we can locate or contact them, we may now be entirely unable to provide them with legal services. Previously the information provided by the ODLS would often allow us to locate and, if necessary, communicate with them, and would in many cases allow us to determine whether and where to pursue legal action to protect their rights.

20. Our work focuses on serving the most vulnerable, many of whom are indigent and face struggles with housing and stability. Many of our clients also have serious medical needs and are at risk of life-threatening health reactions if they were to be detained and/or deported, especially without proper medical support. GBLS attorneys are sometimes the primary support and point of contact for these individuals, who may not have robust community connections. In such cases, the risk of being unable to locate a detained person not only endangers GBLS' mission and a client's legal rights; it may also endanger their physical health and, in some instances, their life.

I declare, under the penalty of perjury, that the foregoing is true and correct.

Executed on November 3, 2026 in Boston, Massachusetts.

Maggie Morgan