**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**GREATER BOSTON LEGAL SERVICES, et al.,**

*Plaintiffs,*

**v.**

**MARKWAYNE MULLIN, et al.,**

*Defendants.*

C.A. No. 26-14869-ADB

**EXPEDITED OPPOSITION REQUESTED**

**PLAINTIFFS' MOTION FOR EXPEDITED PRODUCTION OF PARTIAL ADMINISTRATIVE RECORD AND INCORPORATED MEMORANDUM OF LAW**

On September 15, 2026, the United States Department of Homeland Security ("DHS") effectively disappeared thousands of people by implementing a new policy that removed the locations of detained people with final orders of removal from its Online Detainee Locator System ("ODLS") ("ODLS Final Order Policy" or "Policy"). The existence of the Policy, which has been widely reported in the media, is clear from the uniform immediate impacts on detainees, their families, and their counsel. In the wake of the Policy going into effect, lawyers and family members have been left scrambling to try to find their clients and loved ones, determine who has been affected by the change, and ascertain what alternative mechanisms may exist for locating people in immigration detention.

Because this new Policy inflicts immediate and irreparable harm, Plaintiffs have moved to stay it. *See* Mot. for Stay (D.E. 35). However, DHS has not published the text of the Policy nor submitted a copy in this litigation. *See* Mem. in support of Mot. to Stay (D.E. 36) at 4. Requiring

DHS to submit the actual text of the policy would assist the parties in arguing Plaintiffs' motion to stay the Policy under 5 U.S.C. § 705 and would likely assist the Court in deciding it. Plaintiffs therefore move that Defendants be ordered to produce, at this preliminary stage, a partial administrative record containing (1) the ODLS Final Order Policy; and (2) any transmittals and summaries of the Policy that have been communicated to ICE's field offices and directorates in writing.

Plaintiffs respectfully move that the government be ordered to produce and file this partial administrative record no later than November 25, 2026, to allow for its review in connection with decision on the pending stay motion. *See* Mot. to Stay (D.E. 35). Plaintiffs also therefore request that Defendants be ordered to file any opposition or other response to this motion no later than November 23, 2026. Plaintiffs conferred with counsel for the government the morning of this motion's filing. Government counsel informed Plaintiffs that they could not provide a position today.

**BACKGROUND AND PROCEDURAL HISTORY**

In 2010, DHS launched ODLS to enable members of the public, including family members and attorneys, to more easily and efficiently locate their loved ones and clients in civil immigration detention.[1] Until September 2026, ODLS included all people in civil immigration detention over the age of 18, with limited exceptions for people seeking immigration benefits as survivors of trafficking, domestic abuse, or other crimes.[2]

---

[1] *See* Press Release, U.S. Immigr. & Customs Enf't, ICE announces launch of Online Detainee Locator System (July 23, 2010), https://perma.cc/6ZZ4-2JFS.

[2] *See* U.S. Dept. Homeland Sec., Privacy Impact Assessment for the Online Detainee Locator System, DHS Ref. No. DHS/ICE/PIA-019, 16 July 2025, at 2 https://www.dhs.gov/sites/default/files/2025-07/25_0716_priv_pia-ice-019-odls.pdf (last visited Nov. 17, 2026).

Around September 15, 2026, DHS changed this longstanding policy. It issued a directive that resulted in ODLS excluding people with final removal orders from the database.[3] According to media reports, officers were also instructed to refuse to provide information about people with final removal orders if asked by attorneys or family members[4] and contractors were provided with a script to use with callers looking for detained immigrants to inform them that location information was not public.[5] The result is that families and attorneys are often unable to locate people in civil immigration detention who have orders of removal.[6] Disappearing people into ICE's sprawling network of detention facilities interferes with access to legal services and creates immediate risks to the health and welfare of people arrested by ICE.[7]

---

[3] *See* Ryan J. Foley, ICE Hides Location of Thousands of Detainees with Final Removal Orders, Associated Press (Sep. 21, 2026), https://apnews.com/article/ice-detainee-locator-disappear-removal-ordersc3329a70bce424879bc5880b286c019c [https://perma.cc/LJX5-K47U]. *See also* St. John Decl. (D.E. 37-1) ¶¶ 26, 30, 32 (describing detainee disappearing from ODLS after policy implemented in September 2026), Romero Decl. (D.E. 37-2) ¶¶ 10, 13 (same); Narayanan Decl. (D.E. 37-3) ¶¶ 6-7 (same); Thompson Decl. (D.E. 37-4) ¶¶ 11-12; Metelska Decl. (D.E. 37-5) ¶¶ 6-15 (same); Leban Decl. (D.E. 37-6) ¶ 5 (same); Ghabra Decl. (D.E. 37-7), ¶¶ 5-9; Boyer Decl. (D.E. 37-8) ¶¶ 5-8; De la O Decl. (D.E. 37-9) ¶¶ 6-18; Morgan Decl. (D.E. 37-10) ¶¶ 15-16 (same); Mayer-Salins Decl. (D.E. 37-11) ¶ 18 (same).

[4] *See* Maria Sacchetti & Liam Bowman, *Immigrants with final deportation orders disappear from ICE detainee locator,* Wash. Post (Sep. 21, 2026), https://www.washingtonpost.com/immigration/2026/09/21/immigrants-with-final-deportation-orders-disappear-ice-detainee-locator/ [https://perma.cc/KWR3-RDJ4].

[5] Miriam Jordan, *A Beloved Nurse Was Arrested, Shackled and Hidden in ICE's System*, N.Y. Times (Nov. 10, 2026), https://www.nytimes.com/2026/11/10/us/ice-detainees-hidden-location-deportation.html [https://perma.cc/WHV5-AGDF].

[6] *E.g.*, St. John Decl. (D.E. 37-1) ¶ 30 (describing impossibility of finding client in time to provide effective representation); Narayanan Decl. (D.E. 37-3) ¶¶ 6-18 (describing impacts of inability to locate client as result of Policy); Thompson Decl. (D.E. 37-8) ¶ 8 (without ODLS, clients cannot communicate with attorneys or families); Metelska Decl. (D.E. 37-5) ¶ 21 (Policy "impairs the attorney-client relationship and makes effective representation of clients very difficult, if not impossible"); Ghabra Decl. (D.E. 37-7) ¶ 7 (describing family's inability to contact detained loved one because of Policy); Boyer Decl. (D.E. 37-8) ¶ 20 (describing difficulty of consulting "with family members about their loved one's case if we do not know where the person is").

[7] *E.g.*, St. John Decl. (D.E. 37-1) ¶ 31 (describing serious risk of harm caused by Policy for clients with health conditions); Narayanan Decl. (D.E. 37-3) ¶¶ 15–17, 19 (client removed to country where he had a fear of persecution); Boyer Decl. (D.E. 37-8) ¶¶ 4, 13–14 (client removed to country where he feared torture and was in fact imprisoned immediately upon arrival); Metelska Decl. (D.E. 37-5) ¶¶ 20–21 (client lost opportunity to apply for relief that he was eligible for and lost pending T visa application); Thompson Decl. (D.E. 37-4) ¶¶ 11–14 (transfers of client with severe mental illness impeded attorney advocacy, and client was ultimately removed to third country and was subsequently imprisoned); Morgan Decl. (D.E. 37-10) ¶¶ 19-20 (many clients have serious medical needs and are at risk of life-threatening health reactions if detained or deported without proper medical support, including third-country removals).

Despite making this significant policy change, Defendants have not published the ODLS Final Order Policy, nor otherwise made it available to the public, and have not provided sufficient alternative avenues to find the people in their custody they have excluded from ODLS. This nondisclosure even prompted 47 Members of Congress to send a letter to Defendant Venturella, the acting director of ICE, requesting production of the Policy and other information by October 14, 2026.[8]

Plaintiffs filed this case on October 28, 2026. *See* Cmplt. (D.E. 1). On November 4, 2026, Plaintiffs moved to stay the Policy under 5 U.S.C. § 705 ("the stay motion"). Mot. to Stay (D.E. 35). As a result of Defendants' lack of transparency, Plaintiffs have not yet been able to put the text of the policy into evidence before the Court in their stay motion. Mem. in support of Mot. to Stay (D.E. 36) at 4.

In considering the stay motion, the Court would likely benefit from reviewing the actual policy—both its text, and whatever implementing transmittals or summaries were distributed to ICE's component field offices and directorates. The government has not published that information to the public, and so discovery is warranted. As described below, this Court may order expedited production of some or all of the administrative record, as it has done before in similar cases. *See Nat'l Ctr. for Learning Disabilities v. Off. of Mgmt. & Budget*, No. 26-13019-ADB, 2026 WL 2644014, at *2-3 (D. Mass. July 22, 2026); *Roe v. Mayorkas*, No. 22-10808-ADB, 2023 WL 3466327, at *18-19 (D. Mass. Apr. 28, 2023). Here, Plaintiffs propose that, at a minimum, the Court order expedited production of a subset of the administrative record, specifically (1) the ODLS Final Order Policy; and (2) any transmittals and summaries of the policy that have been communicated to ICE's field offices and directorates in writing.

---

[8] Press Release, Rep. Veronica Escobar, *Representatives Escobar, Rivas Lead 45 of Their Colleagues in Demanding ICE to Restore Detainee Details Back to ODLS* (Sep. 30, 2026), https://perma.cc/W3R4-R73W.

## ARGUMENT

### *A. The Court should order expedited production of the administrative record.*

A district court maintains "'broad discretion . . . to manage scheduling' according to the needs of a case, and 'broad authority to compel discovery,' including 'the authority to order production of the certified administrative record in cases brought under the Administrative Procedure Act.'" *Nat'l Ctr. for Learning Disabilities*, 2026 WL 2644014, at *1 (citations omitted). "To obtain expedited discovery, a party must show good cause." *Id.* at *1; *see also Roe*, 2023 WL 3466327, at *18-19. "Good cause exists if the request for expedited discovery is 'reasonable[ ] ... in light of all of the surrounding circumstances,' including 'the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm, the plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of prematurity.'" *Nat'l Ctr. for Learning Disabilities*, 2026 WL 2644014, at *1 (quoting *Jimenez v. Nielsen*, 326 F.R.D. 357, 361 (D. Mass. 2018)). Here, all factors favor expedited production.

First, expedited production of the partial administrative record will aid this Court in ruling on Plaintiffs' stay motion. Having access to this record will allow the Court's analysis to be grounded in the specific terms and language of the ODLS Final Order Policy and, if the Court determines that a stay order should enter, will aid the Court in crafting a stay order that specifically identifies the policy or portion of the policy being stayed. It is thus "appropriate to require the government to produce" at least a partial administrative record now, to be considered in connection with the motion to stay. *See, e.g.*, *Shokri Varniab v. Edlow*, No. 25-cv-10602, 2026 WL 161410, at *1-2 (N.D. Cal. Jan. 21, 2026) (ordering expedited production of administrative record for consideration in connection with pending motion for preliminary relief).

Second and third, Plaintiffs' stay motion demonstrates irreparable harm and likelihood of success on the merits that readily support expedited production of the administrative record. *See*

Mem. in support of Mot. to Stay (D.E. 36) at 15-32. The ODLS Final Order Policy is a sudden deviation from past practice that is entirely without reasoned explanation or reliance considerations, and it unjustifiably interferes with Plaintiffs' First Amendment rights to free speech and association by impeding their ability to communicate with and represent detainees. The Policy makes it impossible for Plaintiffs to provide critical legal services that are central to their missions and unreasonably endangers the lives and welfare of those Plaintiffs would otherwise serve.

Fourth, the government faces little burden in producing a partial administrative record limited to the policy itself and its distribution to ICE's field offices and directorates (presumably accomplished by a uniform transmittal, summary, or instruction). A reporter who has seen the policy described it as "[a] document announcing the change,"[9] suggesting it is a single document that may readily be produced. This is a "focused and narrow" request that poses little burden*, see Shokri Varniab*, 2026 WL 161410, at *2, and in fact is considerably narrower than prior orders this Court has entered for expedited production of administrative records. *See Nat'l Ctr. for Learning Disabilities*, 2026 WL 2644014, at *2 (ordering complete administrative record produced in "approximately two weeks" and noting that "government agencies have been able to comply with expedited court orders to produce administrative records in similarly time-sensitive situations"); *Roe v. Mayorkas*, 2023 WL 3466327, at *18-19 (ordering complete administrative record produced in 21 days).[10]

---

[9] Jordan, *supra* note 5.

[10] Further, production of the Policy cannot be considered a burden when it is no more than what is already required by the Freedom of Information Act ("FOIA"). FOIA requires agencies to affirmatively disclose "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," 5 U.S.C. § 552(a)(2)(B) and "administrative staff manuals and instructions to staff that affect a member of the public," 5 U.S.C. § 552(a)(2)(C). These affirmative-disclosure obligations protect the public from "secret laws," *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 137 (1975) and "afford the private citizen the essential information to enable him to deal effectively and knowledgably with the Federal agencies." S. Rep. No. 88-1219, at 12-13 (1964) (quotation marks and citation omitted). Records falling under § 552(a)(2) must be made "available for public inspection in an electronic format." The OLDS Final Order Policy easily satisfies these descriptions. Production of the Policy pursuant

Fifth, this request for expedited discovery comes during briefing on a stay motion and is not premature. *Nat'l Ctr. for Learning Disabilities*, 2026 WL 2644014, at *2 (ordering expedited production of the administrative record before the government's motion to dismiss). Accordingly, all factors favor expedited production of at least a partial administrative record, and access to the record will clearly promote judicial efficiency by allowing the Court to decide the pending motion to stay based on the actual text of the challenged new policy.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully move that Defendants be ordered to produce a partial administrative record containing (1) the ODLS Final Order Policy; and (2) any transmittals and summaries of the policy that have been communicated to ICE's field offices and directorates in writing, no later than November 25, 2026. Plaintiffs also therefore request that Defendants be ordered to file any opposition or other response to this motion no later than November 23, 2026.

Dated: November 17, 2026

Respectfully Submitted,

/s/ *Jennifer M. Herrmann*
Jessie J. Rossman (BBO No. 670685)
Daniel L. McFadden (BBO No. 676612)
Jennifer M. Herrmann (BBO No. 708231)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF
MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
dmcfadden@aclum.org
jherrmann@aclum.org

to an order of this Court for expedited production of the administrative record therefore creates no additional burden. *See* Cmplt. (D.E. 1) 25-26 (Fourth Cause of Action for violation of FOIA).

Cassandra Charles* (GA Bar No. 068176)
Kevin Siegel* (NY Bar No. 5800511)
Imani R. Franklin* (DC Bar No. 90006160)
Jia Fu* (NY Bar No. 6294607)
NATIONAL IMMIGRATION LAW CENTER
P.O. Box 34573
Washington, D.C. 20043
Tel.: (213) 639-3900
Fax: (213) 639-3911
charles@nilc.org
siegel@nilc.org
franklin@nilc.org
fu@nilc.org

Stephanie M. Alvarez-Jones* (GA Bar No. 237979)‡
Tess Hellgren* (FL Bar No. 1018834) ⸸⸸
NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD
(National Immigration Project)
1763 Columbia Road NW
Ste 175 #896645
Washington, DC 20009
T: (202) 470-2082
T: (202) 474-3672
stephanie@nipnlg.org
tess@nipnlg.org

Kyle Virgien* (CA Bar No. 278747)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104
Telephone: (415) 343-0770

Angélica César* (AZ Bar No. 041321)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.
New York, NY 10004
Telephone: (202) 549-2500

Annelise Maia Jatoba de Araujo (BBO No. 669913)
ANNELISE ARAUJO LAW LLC
260 Franklin Street, Suite 520
Boston, MA 02110
Telephone: 617-716-6400
annelise@annelisearaujolaw.com

*admitted *pro hac vice*

‡ *Not admitted in DC; working remotely from and admitted in Georgia*
⸸⸸ *not admitted in DC; working remotely from and admitted in Florida*

*Counsel for Plaintiffs*

**Local Rule 7.1 Certificate**

I hereby certify that counsel for Plaintiffs conferred with the government's counsel at the U.S. Attorney's Office for the District of Massachusetts in a good faith effort to narrow or resolve the issues raised by this motion the morning of this motion's filing. Government counsel informed Plaintiffs that they could not provide a position today.

Date: November 17, 2026

*/s/ Jennifer M. Herrmann*
Jennifer M. Herrmann

**Certificate of Service**

I hereby certify that this motion will be served on all registered participants through the Court's CM/ECF system. Additionally, I will email a copy of the foregoing to the government's counsel at the U.S. Attorney's Office for the District of Massachusetts.

Date: November 17, 2026

*/s/ Jennifer M. Herrmann*
Jennifer M. Herrmann